No. 12069

IN THE SUPREME COURT OF THE STATE OF MONTANA

1972

_____

BEVERLY J. OLSON,

Plaintiff and Appellant as to
Defendant Shaefer Plumbing and Heating,

-vs-

JAMES KAYSER and SHAEFER PLUMBING
AND HEATING,

Defendants, James Kayser the Appellant
as to Plaintiff Beverly J. Olson.

_____

Appeal from: District Court of the Fifth Judicial District,
Honorable Frank E. Blair, Judge presiding.

Counsel of Record:

For Appellant:

Bolinger and Wellcome, Bozeman, Montana.
G. Page Wellcome argued, Bozeman, Montana.
Brown and Gilbert, Bozeman, Montana.
Gene I. Brown argued, Bozeman, Montana.

For Respondent:

Berg, O'Connell, Angel and Andriolo, Bozeman, Montana.
Charles F. Angel argued, Bozeman, Montana.

_____

Submitted: September 18, 1972

Decided: JAN 18 1973

Filed: JAN 18 1973

Thomas J. Kearney
Clerk

Mr. Justice Gene B. Daly delivered the Opinion of the Court.

This is an appeal from the district court of the fifth judicial district, county of Madison. Plaintiff, Beverly J. Olson (hereinafter called plaintiff) brought suit against defendants James Kayser (hereinafter called Kayser) the property owner, and Shaefer Plumbing and Heating (hereinafter called Shaefer) the contractor. Plaintiff alleged she was injured in a fall on August 29, 1969, occasioned by stepping into a hole which appeared on Kayser's property as the result of either negligent excavation, construction or maintenance of a ditch, or the negligent backfilling and compaction of the soil in the ditch, which allowed the hole to appear as soil settled in the ditch.

The case was tried to a jury and at the close of all the evidence the trial court directed a verdict in favor of Shaefer on February 4, 1971. Thereafter, the case was submitted to the jury on the question of the liability of the property owner Kayser, and on the same day the jury returned a verdict against the plaintiff and in favor of Kayser.

Upon motion of plaintiff, the trial court on March 1, 1971, entered an order granting plaintiff a new trial as to Kayser, but denied plaintiff's motion for a new trial against Shaefer. Kayser appeals from the court's order granting a new trial to plaintiff. Plaintiff appeals the court's order denying plaintiff's motion for a new trial against Shaefer.

Kayser purchased the property in question on April 1, 1969. The property is located in Ennis, Montana, and consists of two buildings with four units, two of which were occupied by renters. One of the renters at the time Kayser bought the property was Deborah Herman, daughter of plaintiff.

Due to septic tanks which would not drain and water contamination, Kayser decided to have the units connected with the

city water and sewer. The plumbing work was contracted to Shaefer. The work required a trench be dug from the buildings, through a driveway and parking area, to the city street to connect the city services. After the pipes were installed, the trench was refilled and tamped in the area where plaintiff claims to have fallen.

The agreement between Kayser and Shaefer was described as a cost plus job or on a time and material basis. Shaefer started to work on the project around July 1, 1969, and completed it on July 9, 1969, after which Shaefer moved his equipment and men off the premises. On the date of completion the front part of the property, which was a parking area adjacent to the street, was filled in and made level. In addition to the expected normal fill settlement in the ditch, Kayser wanted to raise the parking area with gravel, due to the mud condition that followed rainy periods caused by the parking area being lower than the street.

Kayser first attempted to obtain gravel for his premises sometime around August 1, 1969, by contacting Shaefer again but was notified by Shaefer that it could not do the job because it did not have the equipment nor a gravel pit. Thereafter, Kayser contacted a Steve Hubner who owned a gravel pit and asked him if he could bring in the gravel. Hubner agreed to bring in the gravel and spread it in the parking area and by subsequent contacts with Shaefer, Shaefer was to help spread the gravel to fill other holes on the property. However, before the gravel was brought to the property, plaintiff fell and sustained the injuries which are the basis of this action.

On the night of August 29, 1969, approximately two days before the gravel was spread on the property, plaintiff while going to visit her daughter, Deborah Herman, stepped in a hole in the driveway, pitched forward, and struck her face on the edge of a cement sidewalk. The area of the fall was unlighted, except for a city street light which was obstructed by a large tree in full summer foliage.

Varying descriptions of the hole are found in the testimony. Plaintiff described the hole as being the depth of the length of her leg, or at least past her knee, and somewhat larger than the diameter of her leg. Kayser testified he was on the property a week before the accident and there was no such hole. Steve Hubner, who delivered gravel to the premises two days after the fall, testified that he not see any such hole. Marilyn Olson, another daughter of plaintiff, testified she observed a hole approximately eighteen inches deep in the area. The Ennis night marshall Fred Rankin, who investigated the area after the accident, testified to seeing a hole and described it as being eight and possibly ten inches deep.

From all indications, the hole appeared from three to four days or possibly a week before plaintiff's fall. Fred Rankin testified as to the apparent cause of the hole. He stated there was a period of heavy rain several days before plaintiff's fall, and it was his opinion the hole was caused by the rain. His explanation is not in conflict with Kayser's testimony--that he was last on the property a week before the accident and at that time there was no hole. Additionally, Rankin's explanation is given further credence by the testimony of Marilyn Olson, who was living with her sister Deborah at the time, and who did observe the hole but testified that two weeks prior to the accident there was no hole.

The trial court's order granting a new trial against Kayser stated:

> "The motion of the plaintiff for a new trial as to the defendant James Kayser is granted.
>
> "The basis for granting this motion in the opinion of the Court is that:
>
> "1. The evidence is insufficient to justify the verdict.
> "2. The verdict is against the law of the case."

The trial court's order denying plaintiff's motion for a new trial against Shaefer stated:

- 4 -

"The motion of the plaintiff for a new trial is denied as to the defendant Shaefer Plumbing and Heating.

"The reasons for the ruling are as follows:

"On July 9, 1969, defendant Shaefer Plumbing and Heating Company had completed the work for Mr. Kayser and on that day removed his men, materials and equipment from the job. Said defendant had refilled the trench he had dug completely from the front line of the property of Mr. Kayser back to the second septic tank using all the materials excavated from the trench in doing so. The front portion of the trench where the accident occurred was by him completely filled and compacted. Both Mr. Kayser and Mr. Shaefer realized the trench ground 'would settle.'

"Mr. Kayser accepted the Shaefer Plumbing and Heating Company work completed on July 9, 1969, and upon presentation of a bill paid him for his work, machine use and materials.

"Fifty days later the accident to the plaintiff occurred on August 28, 1969. There is no evidence that Shaefer Plumbing and Heating incurred any liability between July 9, 1969, and August 28, 1969, the date of the plaintiff's accident. There was therefore no issue for the jury. Moreover there was no conflicting evidence and there was but one conclusion to be drawn from the evidence."

In the first appeal, plaintiff seeking a new trial against Shaefer, the law on the subject of control of premises was stated by this Court in Ulmen v. Schwieger, 92 Mont. 331, 354, 12 P.2d 856, and most recently reaffirmed in Hannifin v. Cahill-Mooney Construction Co., _____Mont._____, _____P.2d_____, 29 St. Rep. 493, 496.

In Ulmen, plaintiff drove an automobile into an open excavation and against a concrete culvert, which plaintiff supposed was a regularly established and used highway. There were two defendants the general contractor and a subcontractor for the concrete work. At the time of the accident the concrete work was complete, but had not been accepted by the general contractor or the state highway commission. A judgment of $10,000 was entered against both defendants and they appealed. This Court in affirming as to the general contractor, but reversing as to the subcontractor, Roscoe, held:

- 5 -

"It is also unimportant that Roscoe's work had not been 'accepted'. It was completed and he had withdrawn all control over it, so that it was at the time of the accident but an integral part of the unfinished highway, no part of which would be accepted until Schwieger's [general contractor] entire contract had been fully executed.

"* * *

"'The general rule is well established that an independent contractor is not liable for injuries to third persons, occurring after the contractor has completed the work and turned it over to the owner or employer and the same has been accepted by him * * * the latter is substituted as the responsible party. The reason for the substitution of liability is found in the general doctrine that an action for negligence will not lie unless the defendant was under some duty to the injured party at the time and place where the injury occurred which he omitted to perform.' (14 R.C.L. 107)".

Ulmen contains an in depth discussion with citations in support of the holding which was reiterated verbatim in Hannifin, decided by this Court June 30, 1972.

In Hannifin, the defendant, Cahill-Mooney Construction Company, was given a contract by the Stauffer Chemical Company to remove certain equipment from a building at its plant near Butte, Montana. Following termination of the work and approximately two months following Cahill-Mooney's departure from the premises, plaintiff Hannifin, an employee of Stauffer Chemical Company, fell through a hole in flooring which had been created as the result of the removal of equipment. This Court held, citing Ulmen, that the duty to protect third persons attaches to independent contractors "only when he has such control over the property as the master or contractee would otherwise have."

In the instant case, the trial court's order of March 1, 1971, made the clear observation that the accident occurred fifty days after defendant Shaefer surrendered care of the premises to Kayser. Shaefer incurred no liability following its departure from the premises and there was no issue for the jury. Accordingly, the trial court properly denied plaintiff's motion for a new trial against Shaefer.

The court's order granting a new trial as to defendant Kayser is very brief and assigns two grounds:

"1. The evidence is insufficient to justify the verdict.
"2. The verdict is against the law of the case."

After briefs and argument, it can only be concluded that the trial court considered itself in error when it instructed the jury as to the duty the defendant landowner owed the plaintiff. There were four rental units and one driveway and parking area for the use of the tenants. The fact that only two tenants were in residence, and one did not use the facility available to the tenants, does not alter the situation that there was a common area for the use of the tenants. The alleged injury occurred in this area and the arguments concerning the lack of proof of common usage or that pedestrian travel was allowed in the area does not resolve the question, as there was likewise no proof to the contrary.

Instruction No. 14 properly instructed the jury in regard to an invitee without using the term itself:

"An owner who leases or rents a portion of his property and retains control of another part which a tenant is entitled to use in connection with the portion leased or rented to him, is subject to liability to others lawfully on the premises with the consent of the tenant for injuries caused by a dangerous condition existing on the part of the premises under the owner's control if, by the exercise of reasonable care, he could have discovered the condition and made it safe.

"An owner is not liable to others lawfully on the premises with the consent of the tenant for injuries resulting from a condition of the premises the danger of which is known to the person lawfully on the premises or is obvious, unless the owner should anticipate the harm despite such knowledge or obvious danger."

See Lake v. Emigh, 121 Mont. 87, 190 P.2d 550; Callahan v. Buttrey, 186 F.Supp. 715 (D.C.Mont. 1960).

Instructions No. 26 and No. 27 were in error:

"INSTRUCTION NO. 26. One of the issues to be determined by you in this case is the duty of care owed to Plaintiff at the time and place the accident occurred. Determination of this issue depends upon whether plaintiff was a licensee or an invitee.

"A licensee is a person who, for his own pleasure, convenience, or benefit, enters or remains upon premises in the possession of another with express or implied permission of the possessor.

"An invitee is a person who enters upon land in the possession of another at the invitation of the possessor or for the common interest or mutual advantage of both the possessor and the person entering."

"INSTRUCTION NO. 27. If you find that plaintiff was a licensee, then I instruct you that the only duty owed to her was to refrain from willful or wanton acts of misconduct, or active negligence as distinguished from passive negligence, or to warn plaintiff of any hidden or concealed dangers, if any.

"If you find that plaintiff was an invitee, then the duty owed to her was that of ordinary care."

Duty is a legal question to be determined by the trial court and submitted to the jury, under proper instructions. If there is a conflict in the facts that would change or alter the duty owed to the plaintiff, depending on which facts the jury accepts, then the court must instruct the jury in the alternative to make a fact determination and then apply the correct duty or standard furnished by the court. That was not done in this case.

We do not reject defendant Kayser's argument based on Berthelote v. Loy Oil Co., 95 Mont. 434, 28 P.2d 187, however, the error here does affect the substantial rights of the moving party. Tigh v. College Park Realty Co., 149 Mont. 358, 427 P.2d 57.

The determination by the trial court on a motion for a new trial involves the exercise of judicial discretion and may not be disturbed on review, unless it is clearly shown that the trial court manifestly abused its discretion. This has not been shown here.

Accordingly, the orders of the trial court appealed from are affirmed.

_____
Gene B. Daly
Associate Justice

- 8 -

We Concur:

_James T. Harrison_
Chief Justice

_Frank I. Haswell_

_Wesley Castles_

Associate Justices.